LOTTINGER, Judge.
This is a petitory action instituted by the petitioners wherein they allege ownership of the following described property situated in the Parish of St. Tammany, Louisiana.
Lot No. 2 in Section 14, Township 9' South, Range 13 East, Greensburg District of Louisiana, contains 22.21 acres. Also the fractional North West one-fourth of Section 14 and the fractional North East one-fourth of Section 15 both in Township 9 South, Range 13 East, Greensburg District of Louisiana containing 70.81 acres.
In their original and amended petitions, the petitioners pleaded the chain of title upon which they rely. In their answer, the defendants denied the plaintiff’s title, but admitted their alleged possession of the subject property. The defendants also admitted that they claimed title to a portion of the property described in plaintiff’s petition, and in their answer set forth the chain of title by which they claim, said chain being the same as the chain of title of the petitioners up to a point, at which point defendants’ title separates from that of plaintiff by means of a tax sale in the year 1915. In their answer, the defendants de-raign their title from this tax sale in 1915 from their author in title, to their father in 1929 and the judgments of possession in the successions of their mother in 1943 and their father in 1961. In their answer the defendants also set forth that their father went into possession of the property from the time of his acquisition, and that said possession was evidenced by the erection of buildings, drilling of oil wells, trapping for fur bearing animals, raising of mink, lease of the land and improvements to third parties, execution of mineral leases, payment of taxes and in general alleged that they had exercised every conceivable sort of actual, physical, corporeal and civil possession of the premises. The defendants alternatively pleaded the prescription of ten years and thirty years.
After a trial on the merits, the Trial' Judge rendered judgment in favor of the - defendants and against the plaintiffs, de *777 creeing defendants to be the owners of the subject property. Plaintiffs have appealed.
In his reasons for judgment, the Trial Judge found that the plaintiffs had alleged and proved a clear chain of title from the United States of America to date, and stated that the defendants based their claim on a tax sale for unpaid taxes for the year 1915, made in the name of Rhita DeArmas to E. P. Kinchen, and that Mr. Kinchen had transferred the property to Henry Keller in 1929. The defendants are the heirs of the late Henry Keller, et ux, and their lessees.
The appellants assign three specifications of error. The first is that the Trial Court erred in finding that the defendants proved possession of thirty years when, as alleged by appellants, there is absolutely no evidence of possession prior to 1939. The second assignment of error is that the Trial Court erred in ignoring the knowledge of Henry Keller as to the ownership of property in question as he allegedly purchased same from a party who had absolutely no title whatsoever. Thirdly, appellants urge that Henry Keller was not a purchaser in good faith when he purchased the subject property from E. P. Kinchen, because as owner of property all around the subject property, he knew that the said property really was owned by Joseph Bienvenu.
Mrs. Viola A. Curry, one of the defendants, who was 71 years old at the time of the trial, testified that she was familiar with the subject property, as well as property which adjoined that property to the north and which Henry Keller had acquired from one Edward Doucet in 1925. She testified that Joe Fogg and Louis Oreglia had trapped that portion of the subject property and adjacent property which lay along Bayou Paquet. She testified that she recalled when her father disposed of the Doucet property in 1939 and further recalled that Mr. Oreglia was occupying the property at that time. She testified that after the sale a house was built on the subject property by a Mr. Oscar Grice, and that Oreglia occupied the house for several years. After Oreglia’s departure from the house around 1947, another family moved in and occupied the house until 1952. She testified that the house was vacant during a portion of 1952 and all of 1953, but that from 1954 up to the time of the filing of this suit, the house was in fact occupied. Some of these persons who occupied these premises during this period did so as caretaker and trapper, and others as tenants. She testified that in 1949, Joe Fogg had built another house on the property and occupied it with his family in the capacity of trapper and caretaker for her father. This house was also occupied by numerous people, finally terminating in occupancy by the son of the defendant lessee. She testified that her father had never been disturbed by anyone claiming to own the subject property until sometime in 1960, when Mr. McClure, the tenant, had informed her father that someone was claiming ownership to the property.
Mrs. Joe Fogg testified that she and her husband had lived on the Doucet tract commencing in 1931 and continuing for a period of three or four years, at which time her husband was employed by Mr. Keller as a trapper and forester. She testified that when she and her husband lived on the Doucet tract, they utilized a portion of the tract in litigation for a hog pen and garden.
Albert J. Doucet testified that he had been born in the neighborhood, that he had been employed by Mr. Keller from 1945 to about 1951 as a trapper, and that to the best of his knowledge Mr. Keller had always owned the property in question. Part of the property which Mr. Doucet trapped for Mr. Keller was the subject property. He testified that he recalled that at the time that a house was first built on the subject property, that Mr. Oreglia occupied it. He reiterated that throughout the area the property had always been known as Mr. Keller’s property.
Mr. Leonard Cousin testified that he was familiar with the property owned by Mr. Keller and that he had worked for Mr. *778 Keller previously as a trapper and timber cutter from 1922 until 1956. A portion of the property which he trapped was the subject property; however, he said that he only trapped it for a couple of years, at which time it began to be trapped by Mr. Oreglia’s brother, who was dead at the time of the trial. He testified that he began to trap the subject property “somewhere around between 1929 and 1930”. He confirmed the fact that the houses built upon the subject property had been erected by employees of Mr. Keller and that as a matter of fact he had helped in their construction on occasion.
‘' Mr. Oreglia, who was 67 years of age at the time of the trial, confirmed the fact that he had trapped and forested for Mr. Keller, first occupying what is known as the Doucet tract. He confirmed the fact that during the time he lived on the Doucet tract he maintained a garden and hog pen on the subject property, and the fact that he had left the Doucet property after it was sold by Mr. Keller, and commenced to occupy the house on the subject property. He testified that he remained on'this property until the latter part of 1943. He confirmed the fact that Mr. Fogg had also built a house on the property, and the fact that his deceased brother had at one time trapped the subject property for'Mr. Keller. Mr. Oreglia testified that about eight acres of the 23.44 acres contained in the subject property were trapped.
NOscar Grice, who was 70 years of age at the time of the trial, testified that he had built a camp for Mr. Keller on Bayou Pa-quet, directly opposite the fork of Bayou Paquet and Bayou Liberty, on the west bank. He testified that the camp which he built was in fact occupied at the time of the trial, and that he built it originally for Louis Oreglia and his brother to occupy. I-Ie confirmed the fact that Mr. Oreglia and his brother were living on the Doucet tract, and remembered specifically that when the Doucet tract was sold Mr. Keller had to provide a place for Oreglia and his brother to live in. His testimony is that this took place in December of 1939.
Mr. Plawkins, who was 77 years of age at the time of the trial, testified that he was acquainted with Mr. McClure, knew where he lived on Bayou Paquet, and was familiar with the property, having occupied one of the camps situated thereon. He testified that he had occupied the camp between April 1954 and June of 1956.
Mr. McClure testified that he occupied the subject property and had for a period of ten years preceding the trial, in the capacity of a tenant of Mr. Henry Keller. He stated that a Mr. Henry Price had occupied the property for a period of about two years before he began renting it. Mr. McClure testified that about two and a half years prior to the trial, a man came up to the house and said that he owned the property and told Mr. McClure that he should pay him rent rather than the Kellers. He stated that this occurred at a time when Mr. Keller was still alive and he instructed the people to see Mr. Keller.
Mr. Monroe Fogg was the son of Joe Fogg, who testified with reference to the fact that he and his father had lived on the Doucet tract and that his father had trapped the land and that he quite often went fishing on the boat shed situated on the subject property. He also confirmed the fact that there was a hog pen and a garden on the subject property.
The record contains the Sheriff’s sale to E. P. Kinchen, Mr. Keller’s author in title, for past due taxes owed by one Rhita DeArmas in the year 1916, and the sale from Mr. Kinchen to Mr. Keller in 1929, both sales involving, inter alia, the subject property. An extract of the tax rolls of St. Tammany Parish for the years 1932 through 1964 discloses that Mr. Keller was assessed with and paid the taxes on the subject property for all of those years. There is also in the record the conveyance from Henry Keller to Alfred Dutel, the purchaser of the Doucet tract, in 1939. There is also in the record a mineral lease executed by Henry Keller and his children in *779 February of 1960 to a named lessor wherein said persons leased the subject property.
Taken as a whole, we believe that the record clearly supports the proposition that Mr. Keller acquired the subject property by means of a deed translative of title on July 8, 1929, and that he thereafter exercised sole and exclusive possession of the premises until about 1962. We also believe that the record supports the proposition that Mr. Keller, at the time that he acquired this property in July of 1929, did so in good faith. Appellants argue that this is not possible because Henry Keller had acquired the subject property for unpaid taxes in 1916 under an assessment in the name of Theo. Bienvenue. On April 20, 1918, there was apparently an act of redemption, Mr. Keller transferred the same property to Joseph Bienvenue, and also quit-claimed any interest that he might have at that time in the subject property. Appellants argue that Mr. Keller, having once acquired the property at a tax sale for unpaid taxes in the name of Theo. Bienvenue, could not subsequently be in good faith in 1929 in acquiring the property from Mr. Kinchen. They base this upon the fact that Mr. Kinchen acquired the property by reason of unpaid taxes for the year 1915 assessed in the name of Rhita DeArmas, as aforesaid. Mr. Keller, as aforesaid in 1918 had transferred the property to Joseph Bienvenue, and did not again acquire the property until July 8, 1929. We believe that the interval between this act of redemption and that Mr. Keller’s acquisition from Mr. Kinchen was of sufficient length to remove any cloud or question which might exist with reference to Mr. Keller’s lack of good faith. We cannot presume bad faith on the part of any purchaser, and it appears that none exists in this instance.
In substance, Henry Keller acquired the subject property by act dated July 8, 1929,. apparently in good faith. His acquisition was by means of a deed translative of title, and as is indicated by the oral testimony, he thereafter possessed the property as owner with no interference whatsoever until the time of his death in 1961. We believe these facts clearly support the judgment of the Trial Court insofar as the findings by that Court that the defendants have met the requirements for a ten year prescriptive title. The plaintiffs do not contest the fact of the defendants’ possession of the property since 1939. It is uncontradicted that the employees of Mr. Keller trapped the property in the years between 1929 and 1939, and that there was a garden and hog pen maintained on the property for at least a portion of that period.
Without passing on the correctness of the Trial Judge’s finding that the defendants also proved 30 years adverse prescriptive title, we therefore find the judgment of the Trial Court to be correct.
The subject property is described in the judgment of the Lower Court as follows:
“Lot Two (2) of Section Fourteen (14), Township Nine (9) South, Range Thirteen (13) East, St. Helena Meridian, situated in St. Tammany Parish, Louisiana, containing 22.29 acres.”
Accordingly, the judgment of the Lower Court is affirmed, the appellants to pay all costs of this appeal.
Judgment affirmed.